IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT MARX, | ) |
| | ) |
|    Plaintiff, | ) |
|                v. | )   Civil No. 2:20-cv-00338 |
| | ) |
| ARENDOSH HEATING & COOLING, | ) |
| INC., | ) |
| | ) |
|    Defendant. | ) |

## Opinion

In this civil rights employment discrimination action, Plaintiff Scott Marx sues Defendant Arendosh Heating & Cooling, Inc. (Arendosh) alleging he was unlawfully terminated from his job in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, *et seq.*, and the Pennsylvania Human Relations Act (PHRA) 43 P. S. § 951, *et seq.*  Presently before the Court is Arendosh's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).  ECF No. 8.  For the reasons that follow, the Motion to Dismiss will be granted in part and denied in part.

**I. Factual Background**

Scott Marx was hired as a salesman by Arendosh Heating & Cooling, Inc. on May 28, 2018.  Compl. ¶ 13, ECF No. 1.  On September 16, 2018, Mr. Marx suffered a seizure and stroke and was transported to the hospital.  Id. ¶ 15.  Upon discharge from the hospital, Mr. Marx was informed he was not permitted to drive, pending a follow-up appointment.  Id. ¶ 16.  When Mr. Marx returned to work on Wednesday, September 19, 2018, he notified the owner of Arendosh, Joseph Arendosh, of his medical condition and his inability to drive until he is medically cleared. Id. ¶¶ 17-18.  Mr. Marx provided Mr. Arendosh with copies of his September 16, 2018 medical

records documenting his seizure and stroke.  Id. ¶ 19.  He also informed Mr. Arendosh that his follow-up medical appointment would occur within one week.  Id. ¶ 20.  Mr. Arendosh then directed an employee to drive Mr. Marx to and from job sites to give appraisals before he sent Mr. Marx home.  Id. ¶ 21.  On Friday, September 21, 2018, Arendosh terminated Mr. Marx by letter, signed by Mr. Arendosh.  Id. ¶ 22; Letter from J. Arendosh to S. Marx, Sept. 21, 2018, Ex. A to the Complaint, ECF No. 4.  Mr. Arendosh stated:

> Unfortunately, d[ue] to your recent health problem we are forced to terminate you[r] employment.  The hospital and doctor forms you submitted clearly state no driving.  The requirement of your present sales position employment requires you to drive daily.  If for some reason your license situation changes please let us know as soon as possible.

Id.

Approximately one week after his termination, Mr. Marx's neurologist cleared him to resume driving.  Compl. ¶ 24.  The neurologist sent documentation to the Pennsylvania Department of Motor Vehicles (DMV) to reinstate Mr. Marx's driving privileges.  Id. ¶ 25.  On October 29, 2018, the DMV restored Mr. Marx's driving privileges.  Id. ¶ 26.  Mr. Marx orally informed Mr. Arendosh of his reinstated driving privileges on October 31, 2018.  Id. ¶ 27.  During their conversation, Mr. Arendosh told Mr. Marx that the company would "bring [him] back" once confirmation of his medical release and reinstated driving privileges were provided to Arendosh.  Id. ¶ 28.  On November 14, 2018, Mr. Marx provided Mr. Arendosh with updated medical documentation as well as documentation from the Pennsylvania DMV documentation confirming that Mr. Marx's driving privileges were reinstated.  Id. ¶ 29.  Arendosh chose not to rehire Mr. Marx.  Id. ¶ 30.  Mr. Arendosh explained that his decision not to rehire Mr. Marx was because the "Doctor's notes aren't very clear."  Id. ¶ 31.  Mr. Marx questioned Mr. Arendosh's

reasoning regarding his decision not to rehire him, to which Mr. Arendosh replied, "That's what I decided." Id. ¶¶ 32-33.

In his Complaint, Mr. Marx alleges that Arendosh unlawfully terminated him in violation of the ADA (Count 1) and the PHRA (Count 2) based on his disability or because Arendosh regarded him as disabled. Mr. Marx also alleges that Arendosh unlawfully failed to accommodate him, failed to rehire him, and, with respect to the ADA only, retaliated against him because he requested a reasonable accommodation.

## II. Standard of Review

When reviewing a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Eid v. Thompson, 740 F.3d 118, 122 (3d Cir. 2014) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008)). "To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556); see also Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the

necessary element[s].'" Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir.2009) (quoting Graff v. Subbiah Cardiology Associates, Ltd., 2008 WL 2312671 (W.D. Pa. June 4, 2008)); see also Connelly v. Lane Const. Corp., 809 F.3d 780, 790 (3d Cir.2016) ("Although a reviewing court now affirmatively disregards a pleading's legal conclusions, it must still . . . assume all remaining factual allegations to be true, construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them.") (citing Foglia v. Renal Ventures Mgmt., LLC, 754 F.3d 153, 154 n. 1 (3d Cir.2014)).

Plaintiff's allegations must be accepted as true and construed in the light most favorable to plaintiff when determining if the complaint should be dismissed. Trzaska v. L'Oreal USA, Inc., 865 F.3d 155, 162 (3d Cir. 2017), as amended (Aug. 22, 2017). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. Morse v. Lower Merion School District, 132 F.3d 902, 906, n. 8 (3d Cir.1997). The primary question in deciding a motion to dismiss is not whether the Plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. Maio v. Aetna, 221 F.3d 472, 482 (3d Cir.2000). The purpose of a motion to dismiss is to "streamline [] litigation by dispensing with needless discovery and factfinding." Neitzke v. Williams, 490 U.S. 319, 326–327, (1989).

Finally, if the court decides to grant a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the court must next decide whether leave to amend the complaint must be granted. "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236 (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

**III.     Discussion**

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[1]  42 U.S.C. § 12112(a).  To state a claim for relief under the ADA, a plaintiff must allege facts demonstrating "(1) [s/]he is a disabled person within the meaning of the ADA; (2) [s/]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) [s/]he has suffered an otherwise adverse employment decision as a result of discrimination."  Eshleman v. Patrick Indus., 961 F.3d 242, 245 (3d Cir. 2020) (internal quotations omitted) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999)).  The ADA considers a person disabled if they: "(A) [have] a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) [have] a record of such an impairment; or (C) [is] regarded as having such an impairment."  42 U.S.C. § 12102(1).  "[T]o be an individual with a disability, an individual is only required to satisfy one prong."  29 C.F.R. app. § 1630.2(g)(2).

Arendosh moves to dismiss Mr. Marx's Complaint for failure to state a prima facie case of disability discrimination.  First, Arendosh argues that Mr. Marx's allegations are insufficient to support that he is actually disabled because he fails to sufficiently allege a substantial limitation on a major life activity.  Next, Arendosh argues that Mr. Marx's alleged impairment does not qualify as a disability under the ADA because it was temporary, non-chronic, and of short duration.  Arendosh then argues that Mr. Marx's allegations are insufficient to state a claim

---

[1] "Because the PHRA is basically the same as the ADA in relevant respects, the same analysis applies to a PHRA claim as to an ADA claim." Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d Cir. 2002) (internal quotations and citations omitted).  Therefore, the Court considers Mr. Marx's PHRA and ADA claims together.

that Arendosh regarded him as disabled within the meaning of the ADA. Finally, Arendosh moves to dismiss Mr. Marx's failure to accommodate and retaliation claims for failure to state a claim.

### A. Substantial Limitation on Major Life Activity

Arendosh argues that Mr. Marx has failed to sufficiently allege that his stroke and seizure substantially limited his major life activities. Under the "actual disability" prong of the ADA, 42 U.S.C. § 12102(1)(A), a plaintiff must allege an impairment that substantially limits a major life activity. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). "An impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D). "The ADA was amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009. Rubano v. Farrell Area Sch. Dist., 991 F. Supp. 2d 678, 690 (W.D. Pa. 2014). "In enacting the ADAAA, Congress has made clear that the 'question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis[.]'" Id. (quoting ADAAA § 2(b)(5), Pub.L. 110–325, S. 3406, 122 Stat. 3553, 3554 (2008)).

"The term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008," 42 U.S.C. §12102(4)(B), and "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. 29 C.F.R. § 1630.2(j)(1)(i). It "is not meant to be a demanding standard." Id. The substantial limitation of an individual's ability to perform a major life activity is judged in comparison "to most people in the general population." Id. § 1630.2(j)(1)(ii). "Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning,

6

reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include "the operation of a major bodily function," including "neurological, brain, respiratory, [and] circulatory … functions." Id. § 12102(2)(B). Further, "[t]he operation of a major bodily function includes the operation of an individual organ within a body system." Id. § 1630.2(i)(1)(ii).

Mr. Marx alleges that his impairment, a stroke and seizure, limited his ability to sleep and concentrate, and limited him in performing general activities. Each of these activities is specifically identified within the relevant statutes and regulations as a major life activity under the ADA. Mr. Marx's allegations regarding this element of a prima facie case are not viewed in isolation. He alleges that he suffered an impairment that, by definition, affects neurological functioning. Viewed in a light most favorable to Mr. Marx, his allegations support the inference that his impairment affected his neurological functioning, which negatively impacted his sleep and his ability to concentrate. Mr. Marx has provided "enough facts to raise a reasonable expectation that discovery will reveal evidence" of specifically how his impairment affected the major life activities he identified. Phillips, 515 F.3d at 234. Arendosh has sufficient information to specifically inquire of Mr. Marx as to how his impairment limits his sleep (*e.g,* unable to get to sleep, waking in the middle of the night, etc.), his concentration (*e.g,* reading, watching television, engaging in conversation, etc.), and his general activities. See Fowler, 578 F.3d at 213 (plaintiff is not required to *establish* the elements of a prima facie case at the motion to dismiss stage). Considering the relevant legal standard on a motion to dismiss under Rule 12(b)(6), Iqbal, 556 U.S. 662, Twombly, 550 U.S. 544, and Connelly, 809 F.3d 780, the Court finds that Mr. Marx has set forth sufficient factual allegations, taken as true, to support that his impairment substantially limits a major life activity.

Mr. Marx's allegations, however, are insufficient to show that Mr. Marx is pleading "driving" as a major life activity by itself, or as it relates to working. First, Mr. Marx has not alleged a substantial limitation to his ability to work at all. In addition, "driving" by itself, does not qualify as a major life activity. See Robinson v. Lockheed Martin Corp., 212 F. App'x 121, 124 (3d Cir. 2007) ("driving is not a major life activity") (citing Chenoweth v. Hillsborough County, 250 F.3d 1328, 1329–30 (11th Cir.2001) and Colwell v. Suffolk County Police Dep't, 158 F.3d 635, 643 (2d Cir.1998)). Accordingly, Arendosh's Motion to Dismiss Mr. Marx's disability claim for failure to allege a substantial limitation on a major life activity will be denied as to sleeping, concentrating, and general activities, and granted as to driving and working.

Mr. Marx will be permitted leave to amend, should he choose to do so, to provide sufficient allegations that he was substantially limited in the major life activity of working. Federal Regulations, however, caution against claiming the major life activity of "working." 29 C.F.R. app. § 1630.2(j)(5-6) ("In most instances, an individual with a disability will be able to establish coverage by showing substantial limitation of a major life activity other than working; impairments that substantially limit a person's ability to work usually substantially limit one or more other major life activities.").[2]

B. **Duration of the Disability under the ADA**

Arendosh next argues that, even if Mr. Marx sufficiently alleges a substantial limitation on a major life activity, his claimed impairments are non-qualifying under the ADA because they are temporary, non-chronic impairments of short duration. Initially, under the ADA, impairments of short duration are not automatically foreclosed as disabilities. "[F]ollowing

---

[2] This is not to say a plaintiff cannot allege "working" as a major life activity. The regulations discuss the process for demonstrating a substantial limitation to the major life activity of "working." 29 C.F.R. app. § 1630.2(j).

enactment of the ADAAA, '[t]he effects of an impairment lasting or expected to last fewer than six months *can* be substantially limiting.'" Miller v. Coca-Cola Refreshments USA, Inc., No. 2:16CV93, 2018 WL 1456502, at *11 (W.D. Pa. Mar. 23, 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ix) (emphasis added)).  In addition, "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 29 C.F.R. § 1630.2(j)(1)(vii).

As stated above, Mr. Marx's allegations support the inference that his impairment affected his neurological functioning, which negatively impacted his sleep, his ability to concentrate, and to engage in general activities.  As the Miller Court explained, "'[t]he duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity." Miller, 2018 WL 1456502, at *11 (quoting 29 C.F.R. Pt. 1630, App.)).  "'Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe.'" Id.  "The determination of whether an impairment substantially limits a major life activity requires an individualized assessment." 29 C.F.R. § 1630.2(j)(1)(iv).  Such an individualized assessment is best undertaken after the parties have had a full opportunity to undergo discovery.  Discovery will provide Arendosh the opportunity to inquire of Mr. Marx about the severity of his limitations with respect to the duration of the impairment.  Phillips, 515 F.3d at 234.  At this stage of the proceedings, it is premature to conclude, as a matter of law, that Mr. Marx's impairment is too short in duration to qualify as a disability under the ADA.  Arendosh's Motion to Dismiss, to the extent that it argues that Mr. Marx's disability was too short in duration to qualify as a disability, will be denied.

C. **"Regarded As" Claim**

To be "regarded as" having a disability under the ADA, a plaintiff must allege facts to show he "has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). "This provision is designed to restore Congress's intent to allow individuals to establish coverage under the 'regarded as' prong by showing that they were treated adversely because of an impairment, without having to establish the covered entity's beliefs concerning the severity of the impairment.." 29 C.F.R. app. § 1630.2(l). An employee is "regarded as" disabled when an employer "'misinterpret[s] information about an employee's limitations to conclude that the employee is incapable of performing' his or her job requirements." Eshleman, 961 F.3d at 245. Even if an employer asserts, or ultimately establishes, a defense to having taken a prohibited action against an employee because of the employee's perceived disability, the employer has still "regarded" the employee as having a disability. 29 C.F.R. § 1630.2(l)(2). Coverage under the "regarded as" prong of the definition of disability should not be difficult to establish. 29 C.F.R. app. § 1630.2(l).

Arendosh argues that Mr. Marx cannot state a "regarded as" claim because his alleged impairment, stroke and seizure, is transitory and minor. "[W]here a plaintiff is merely regarded as disabled rather than suffering from an actual disability, the perceived impairment must *not* be transitory and minor. Kiniropoulos v. Northampton Cty. Child Welfare Serv., 917 F. Supp. 2d 377, 386 (E.D. Pa. 2013) (citing 42 U.S.C. § 12102(3)(B). "The 'transitory and minor' argument is a defense to an ADA claim." Odysseos v. Rine Motors, Inc., No. 3:16CV2462, 2017 WL 914252, at *2 n. 1 (M.D. Pa. Mar. 8, 2017) (quoting 29 C.F.R. § 1630.15(f)). Arendosh has the

burden to "establish that the perceived impairment is objectively *both* transitory and minor." Eshleman, 961 F.3d at 247 (emphasis in original). Arendosh "may not defeat 'regarded as' coverage … simply by demonstrating that it subjectively believed the impairment was transitory and minor." 29 C.F.R. § 1630.15(f). The ADA defines "transitory" as "an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(b). "Minor" is not defined by the statue, however, courts considering whether an impairment is "minor" should consider "such factors as the symptoms and severity of the impairment, the type of treatment required, the risk involved, and whether any kind of surgical intervention is anticipated or necessary—as well as the nature and scope of any post-operative care." Eshleman, 961 F.3d at 247.

In Odysseos v. Rine Motors, on a motion to dismiss, the defendant raised a similar argument that plaintiff's impairment was transitory and minor. Odysseos, 2017 WL 914252, at *2. In Odysseos, the defendant argued that plaintiff's heart impairment was objectively transitory and minor. Odysseos, WL 914252, at *2. As to the "transitory" prong, the defendant argued that the impairment lasted only three months. Id. As to the "minor" prong, the defendant argued "that plaintiff advised the defendant's owner, Rinehart, that he had completely recovered from his hospitalization, that he never missed work for health reasons, and that he only missed eight (8) days of work due to his post-biopsy infection." Id. The Court disagreed, explaining the relevant law as follows:

> federal regulation interpreting the "transitory and minor" impairment defense indicates that an employer that terminates an employee with an objectively "transitory and minor" impairment, mistakenly believing it to be symptomatic of a potentially disabling impairment, has nevertheless regarded the employee as disabled. 29 C.F.R. § 1630, App. Stated differently, an employer that takes a prohibited employment action against an employee based on a perceived impairment that is not "transitory and minor" has regarded the employee as disabled. Id.

Case 2:20-cv-00338-MJH   Document 19   Filed 12/18/20   Page 12 of 16

Odysseos, 2017 WL 914252, at *2.  In Odysseos, the plaintiff alleged that defendant regarded him as having a disabling heart impairment.  After plaintiff returned to work, defendant repeatedly questioned him about his current health and about his potential future health.  Id.  In response, the plaintiff assured defendant that his health was good.  Id.  Nonetheless, defendant interviewed candidates for plaintiff's position, continually asked plaintiff about his plans for retirement, and eventually terminated him.  Id.  The Odysseos Court concluded that, even if plaintiff's impairment was transitory and minor, "[t]aking plaintiff's well-pled allegations as true, the defendant's owner, Rinehart, may have believed plaintiff's diagnostic heart monitoring to be symptomatic of an impairment disabling enough to terminate plaintiff's employment."  Id. at *3.  Thus, the Court concluded that at "this juncture, prior to the development of a full factual record, plaintiff has sufficiently pled that the defendant "regarded" him as disabled."  Id.

      Here, Arendosh similarly argues that Mr. Marx's stroke and seizure is transitory and minor because medical care lasted only three days, his driving privileges were restored in less than two months, and Mr. Marx advised Mr. Arendosh that he had been medically cleared to return to work with no restrictions.  As with the plaintiff in Odysseos, Mr. Marx's allegations, viewed in a light most favorable to him, support the inference that Mr. Arendosh regard Mr. Marx as disabled.  Mr. Marx informed Arendosh of his seizure, stroke, and hospitalization.  Arendosh appointed Mr. Marx a driver because of his driving restriction.  In Mr. Arendosh's termination letter, he acknowledged Mr. Marx's "recent health problem" as well as a potential indefiniteness to Mr. Marx's impairment ("*If* for some reason your license situation changes").  When refusing to rehire Mr. Marx, Arendosh referred to medical documentation it viewed as not "very clear."  Taken together, Mr. Marx alleges that Arendosh was not only aware of Mr. Marx's alleged impairment, but that Arendosh actually regarded Mr. Marx as disabled.  It is a fair

12

inference to presume that Arendosh did not want to continue to provide a driver for Mr. Marx, and therefore terminated him. This conclusion is further supported by Arendosh's termination letter, which suggests that Arendosh's perception that Mr. Marx was disabled was in fact the cause of Mr. Marx's termination. Furthermore, Arendosh's explanation why it chose not to rehire Mr. Marx based on "unclear" medical documentation, suggests that Arendosh was, at a minimum, concerned that Mr. Marx's impairments and limitations were not transitory. Likewise, it is a fair inference that Arendosh left open the possibility that Mr. Marx would be rehired, but only if Mr. Arendosh no longer had to provide an accommodation for Mr. Marx. Finally, when Mr. Marx attempted to regain his position, Arendosh may have determined that because the medical documentation was unclear, it may have had to provide Mr. Marx with some accommodation, and Arendosh did not want to. As in Odysseos, Arendosh's "prohibited employment action against an employee based on a perceived impairment that is not 'transitory and minor'" is sufficient to show that the employer has regarded the employee as disabled. Odysseos, 2017 WL 914252, at *2 (citing 29 C.F.R. § 1630, App.). Therefore, the Court concludes that at this early stage of the proceedings, "prior to the development of a full factual record, [Mr. Marx] has sufficiently pled that the defendant "regarded" him as disabled." Id.

In addition, Mr. Marx's claim survives independently because at this stage of the proceedings it is premature to conclude that his impairment is minor. As stated by the Eshleman, "the issue of whether an impairment is 'minor' is a separate and distinct inquiry from whether it is 'transitory.'" Eshleman, 961 F.3d at 247. The "'transitory and minor' exception was intended to weed out only 'claims at the lowest end of the spectrum of severity,' such as 'common ailments like the cold or flu,' and that the exception 'should be construed narrowly.'" Eshleman, 961 F.3d at 248 (citing H.R. Rep. No 110-730 pt. 2, at 5 (2008)). Evaluating Mr. Marx's

13

allegations in accordance with the standard applicable at this stage of the proceedings, it is premature to conclude that Mr. Marx's impairment is objectively minor.  The record on this issue needs to be developed through discovery.  Bearing in mind that "[c]overage under the 'regarded as' prong of the definition of disability should not be difficult to establish," 29 C.F.R. app. § 1630.2(l), at this stage, Mr. Marx has sufficiently pleaded he was "regarded as" disabled by Arendosh.  Arendosh's Motion to Dismiss Mr. Marx's "regarded as" claim will be denied.

### D. Failure to Accommodate and Retaliation Claims

To support a claim for failure-to-accommodate under the ADA,[3] a plaintiff must establish four elements: "'(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" Capps v. Mondelez Global, LLC., 847 F.3d 144, 157 (3d Cir. 2017) (quoting Armstrong v. Burdette Tomlin Mem'l Hosp., 438 F.3d 240, 246 (3d Cir. 2006).  Once the employee has requested an accommodation, "the employer must make a reasonable effort to determine the appropriate accommodation" which is "best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. pt. 1630, app. § 1630.9 at 419.  To support a retaliation claim a plaintiff must allege three elements: (1) he engaged in protected activity; (2) his employer took a 'materially adverse' action against him; and (3) there was a causal connection between the protected activity and the employer's action.  Garner v. Sch. Dist. of Phila., 63 F. Supp. 3d 483, 500 (E.D. Pa. 2014).

---

[3] Mr. Marx did not state a claim for failure to accommodate under the PHRA in Count 2.

Mr. Marx's allegations do not, as currently alleged, support an accommodation claim or retaliation claim because his allegations do not support the inference that he engaged in the protected activity of requesting an accommodation. Mr. Marx does not allege that he requested an accommodation upon first returning to work. He alleges only that he told Mr. Arendosh about his driving restriction. In response, Mr. Arendosh provided Mr. Marx with a driver, but Mr. Marx does not allege that he requested a driver. There are no allegations as to what either party did on the day after Mr. Marx was provided with a driver, up to the time he was fired on September 21, 2018. He also does not allege that he requested an accommodation when he reapplied for his position. In fact, the reasonable inference from the allegations is that Mr. Marx did not think he needed an accommodation. When Mr. Marx reapplied for his job, he offered documentary evidence to show that he was permitted to drive, implying that he was not in need of an accommodation. Therefore, because the allegations do not support that Mr. Marx requested an accommodation, Arendosh's Motion to Dismiss Mr. Marx's failure to accommodate claim and retaliation claim will be granted.[4] Said claims will be dismissed with prejudice.

Mr. Marx will be permitted leave to amend his failure to accommodate claim, should he choose to do so, to provide sufficient allegations that he requested an accommodation. Mr. Marx is also permitted leave to amend his retaliation claim, should he choose to do so, to provide sufficient allegations that engaged in the protected activity of requesting an accommodation.

---

[4] Arendosh's Motion to Dismiss the failure to accommodate claim because Mr. Marx is not actually disabled is moot, because the Court has found that, for purposes of the Motion to Dismiss, Mr. Marx has sufficiently alleged that he is a disabled person under the ADA.

## IV. Conclusion

For the reasons stated above, Arendosh's Motion to Dismiss will be granted in part, and denied in part. An appropriate Order will be entered.

IT IS SO ORDERED.

Dated: <u>December 18, 2020</u>

                                                  Marilyn J. Horan
                                                  United States District Court Judge